STATE, Respondent, vs. LARSON and another, Appellants.

*October 17—November 10, 1931.*

The defendants, Alfred Larson and Agnes Larson, were convicted on the 14th day of April, 1931, of the offense of maintaining and operating a house of ill fame, from which judgment of conviction they bring this appeal.

The cause was submitted for the appellants on the brief of *Doyle & Doyle* of Menominee, Michigan, and for the respondent on that of *N. B. Langill,* district attorney of Marinette county.

OWEN, J.   Sec. 351.35, Stats., under which the defendants were prosecuted, reads as follows:

"Any person who shall keep a house of ill fame, resorted to for the purpose of prostitution or lewdness, or who shall set up or keep a common bawdyhouse or brothel, or who shall set up, maintain or operate any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation, or who shall knowingly lease or let to another any place, conveyance, structure, house or other building or any room in any house or building for the purpose of being used as a house of ill fame, bawdyhouse or brothel or for purposes of prostitution, lewdness or assignation or knowing that it will be so used, or who shall receive, or offer or agree to receive any person into any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation, or shall permit any person to remain there for such purpose, shall be punished by imprisonment in the state prison not more than three years nor less than one year, or by imprisonment in the county jail not more than one year nor less than six months, and when imprisoned in the county jail by a fine not exceeding five hundred dollars nor less than two hundred dollars; and, in either case, if the lessee of any

such premises shall have been convicted under this section such lease shall be void, and thereupon the lessor shall have the like remedy to recover possession of such premises as against a tenant holding over his term."

The information upon which they were convicted reads as follows:

"I, Norman B. Langill, district attorney for said county, hereby inform the court that on the 28th day of February, 1931, at the town of Peshtigo, in said county, Agnes Larson and Alfred Larson did set up, operate, and maintain a structure or building commonly known as the Poplar Grove on U. S. highway 41, in the town aforesaid, such structure or building being used for the purpose of prostitution, lewdness, and assignation, and that the said Agnes Larson and Alfred Larson well knew that the said premises were being used for the purposes aforesaid, and that they knew and permitted women of lewd character to inhabit said premises and operate therein, all contrary to section 351.35, R. S. Wis. 1929, and against the peace and dignity of the state of Wisconsin."

The evidence in the case showed that Poplar Grove roadhouse is a building located on U. S. highway 41, in the town of Peshtigo, Marinette county, midway between the cities of Marinette and Peshtigo. It was built by the defendants Alfred Larson and Agnes Larson in 1929. They commenced occupancy of the premises in September, 1929, and conducted them as a road-house, where beverages, intoxicating and non-intoxicating, tobacco and candy, were sold. They so conducted said business until June 19, 1930. On the latter date the occupancy of the premises and the management of the business were turned over by the Larsons to one Frank Smith, under some kind of an arrangement the exact nature of which was a litigated issue in this case. The evidence shows that after Frank Smith's occupancy of the premises lewdness and prostitution were carried on therein.

On the 28th day of February, 1931, a raid on said premises was made and Frank Smith was arrested. On the 3d day of March, 1931, Alfred Larson and Agnes Larson were

arrested, charged with being the proprietors of said place. The evidence showed that after the occupancy of said premises by Smith, the Larsons lived in Marinette, but that they nevertheless spent much of their time at Poplar Grove, being there practically every day and, sometimes, well into the night.

According to the testimony of Smith, the agreement between him and the Larsons was that he, Smith, was to run the business on a 50-50 basis—a sort of partnership agreement. Larson testified that he had leased the premises to Smith for an agreed rental of $50 per month. His defense was that he was not the proprietor of the premises and, consequently, not guilty.

An analysis of sec. 351.35, Stats., discloses that a person offends against the provisions of that section (1) if he shall keep a house of ill fame; (2) if he shall set up or keep a common bawdyhouse or brothel; (3) if he shall set up, maintain, or operate any place, structure, building, or conveyance for the purpose of prostitution, lewdness, or assignation. There is not much difference in the import of these three specifications, and all of them seem to contemplate that the person offending shall be the proprietor of the premises or the business therein conducted. The next, or fourth, provision or phrase of the section is to the effect that one who shall "knowingly lease or let to another any place, conveyance, structure, house or other building or any room in any house or building for the purpose of being used as a house of ill fame" commits a violation of the statute. Guilt under this provision requires that one lease his premises to another for the express purpose of prostitution. The fifth provision is, "or knowing that it will be so used." Under this provision the proprietor is penalized if he leases his premises knowing that they will be used for prostitution. The next provision is, "or who shall receive, or offer or agree to receive any person into any place, structure, building or con-

veyance for the purpose of prostitution, lewdness or assignation." This penalizes one who shall receive or agree to receive any person into his building for the purposes of prostitution. In order to constitute guilt under this provision, it is necessary that the accused have legal possession of the premises and authority to either receive or refuse to receive any such person into the building. The next provision is, "or shall permit any person to remain there for such purpose." This implies authority to either grant permit to remain or power to exclude, and this in turn depends upon the nature of the control which the accused has over the premises.

The penalties of this statute are aimed against two classes of offenders: (1) the person who has control of the premises by reason of his ownership thereof, or by reason of his right of occupancy thereof through a leasehold or some other interest; (2) the person who owns the premises and who expressly leases them for the purpose of prostitution, or leases them knowing that they will be used for the purpose of prostitution.

To be guilty of the offense charged in the information it was necessary to show that the Larsons were the proprietors of the premises and of the business. The State sought to do this by showing that the Larsons had complete control of both the premises and the business, and that they had installed Smith in the premises only for their convenience in prosecuting the business, giving to him fifty per cent. of the profits thereof. There was abundant evidence from which to find that this was the arrangement. However, the testimony of Larson was that he leased the premises to Smith for a monthly rental, and that he had no interest in or control over Smith's operations therein. In this state of the evidence the court charged the jury as follows:

"The question for you to determine is whether or not the Larsons operated there by a partnership arrangement or by supervision and control of Poplar Grove road-house and

that they knew of the lascivious conduct of these two girls at that place. The question of knowledge is the question upon which this case turns. If you are satisfied beyond a reasonable doubt of the guilty knowledge of the defendants Larson in this case, it is your duty to find them guilty. Otherwise you will find them not guilty."

Manifestly the court was correct in charging the jury that the question for them to determine was whether the Larsons operated there by a partnership arrangement or by supervision and control of Poplar Grove road-house. If they did not so operate and control, they were not guilty of any offense charged in the information. They were charged with no offense as lessors.

We now come to that part of the charge which necessitates the granting of a new trial. After telling the jury that it was for them to determine whether the Larsons operated there by a partnership arrangement or by supervision and control, the court instructed the jury:

"The question of knowledge is the question upon which this case turns. If you are satisfied beyond a reasonable doubt of the guilty knowledge of the defendants Larson in this case, it is your duty to find them guilty."

This limited the jury to the question of whether the defendants knew that prostitution was being carried on in the premises. If the defendants had such knowledge, then the jury must find them guilty, no matter whether they found they were operators or not. Under the instruction they were guilty if they had knowledge of acts of prostitution in the premises no matter what their relation to the premises was.

It cannot be told from this verdict whether the jury believed that the defendants were operators of the resort or whether they were merely the lessors. Under the instruction the jury were bound to find them guilty if they had knowledge of acts of prostitution therein. This was not necessarily true if they were the lessors of the premises.

The defendants were entitled to the verdict of the jury upon the question of whether they were the operators of the place or merely lessors. If they were lessors, then it would have been material to determine whether the premises were leased for the express purpose of prostitution, or whether they were leased knowing that they would be used for the purpose of prostitution, if the information had charged such offense. But it did not charge such an offense. The case did not turn upon the question of knowledge. It turned upon the question of whether the defendants were proprietors.

*By the Court.*—Judgment reversed, and cause remanded with instructions to grant a new trial.