PER CURIAM.
¶1 Lamondre Moore appeals judgments convicting him of first-degree sexual assault of a child, domestic abuse battery, and witness intimidation. Moore also appeals an order denying his postconviction motion seeking a new trial based on ineffective assistance of counsel. Moore argues that the circuit court erred in denying his motion. We disagree and affirm.[1]
Background
¶2 The charges against Moore stemmed from an incident in which Moore was alleged to have sexually assaulted three-year-old M.J. and engaged in battery of R.B. when R.B. discovered the sexual assault. At the time, Moore and R.B. were in a relationship, and R.B. was M.J.'s primary caregiver.
¶3 According to R.B.'s testimony, early one morning R.B. awoke upon hearing M.J. "whine[ ] out" and discovered Moore and M.J. together, both naked from the waist down. When R.B. took M.J. into another room to comfort her, Moore "came in in a rage" and hit R.B. twice in the head. R.B. left her apartment to seek help from a neighbor. Moore chased R.B. down, dragged her back to her apartment, and "choked" her. R.B. managed to get away when her neighbors came to her aid. Neighbors also retrieved M.J. from R.B.'s apartment, and R.B. called the police. M.J. told R.B. that "her daddy hurt her," referring apparently to Moore.
¶4 R.B.'s testimony was corroborated, in part, by one of R.B.'s neighbors. In addition, the jury heard evidence that a dried secretion swabbed from M.J. tested negative for semen but had a DNA profile consistent with a DNA sample from Moore. During closing arguments, the prosecutor asserted that this secretion could have come from Moore "spitting" on his penis to facilitate Moore's sexual assault of M.J.
¶5 In his postconviction motion, Moore alleged that counsel was ineffective by failing to object to testimony by R.B.'s neighbor as containing hearsay statements by R.B. Moore also alleged that counsel was ineffective by failing to object to the prosecutor's assertion that Moore spit on his penis as unsupported by the evidence. The circuit court denied Moore's motion without a hearing.
Discussion
¶6 To show ineffective assistance, the defendant must demonstrate both that counsel performed deficiently and that counsel's deficient performance was prejudicial. State v. Mayo , 2007 WI 78, ¶60, 301 Wis. 2d 642, 734 N.W.2d 115. We need not address both prongs of the test if the defendant makes an insufficient showing as to either one. Id. , ¶61. Here, we reject Moore's ineffective assistance claims based on Moore's failure to show deficient performance.
¶7 We begin with Moore's contention that counsel was ineffective by failing to object to testimony by R.B.'s neighbor as containing hearsay statements by R.B. Moore points to the following testimony by R.B.'s neighbor:
[R.B.] said that she heard [M.J.] cryin', and she said she went into the room, and she said that [M.J.'s] underwears was off, and she thought she peed in the bed or somethin', and she said that she found her underwear behind the-the couch, and that was it.
....
She said she saw [Moore] standin' in the chair or sittin' in the chair doin' somethin' and [M.J.] was standing and he had his shirt off or whatever. That's all I can remember.
¶8 The State argues that counsel was not deficient by failing to object to this testimony because R.B.'s statements fall within the excited utterance exception to the hearsay rule as "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." See WIS. STAT. § 908.03(2).[2] We agree that the statements are reasonably viewed as excited utterances and, therefore, that counsel was not deficient in failing to object to R.B.'s neighbor's testimony.
¶9 R.B.'s discovery that Moore appeared to have just sexually assaulted M.J. was a startling event from R.B.'s perspective, and R.B.'s statements to her neighbor plainly related to that event. Further, although it is unclear how many minutes passed from the time of R.B.'s discovery to the time she made the statements, it is clear that R.B. made the statements during the immediate aftermath of her discovery, and there was evidence that, when R.B. made the statements, she remained under the stress of excitement caused by that discovery. R.B.'s neighbor testified that R.B. was "hysterical" when R.B. came to the neighbor's apartment for aid. Additionally, one of the responding officers, who did not observe R.B. until after she made the statements, testified that R.B. appeared "upset" and "seemed fearful by shaking."
¶10 Moore argues that the excited utterance exception does not apply because R.B.'s statements were made in response to questions. However, Moore does not demonstrate as a factual matter that R.B.'s statements were made in response to questions. Regardless, we reject this argument because Moore provides no authority for the proposition that statements in response to questions cannot qualify as excited utterances.
¶11 We turn to Moore's contention that counsel was ineffective by failing to object to the prosecutor's assertion, during rebuttal closing argument, that the non-semen secretion found on M.J. could have come from Moore spitting on his penis to facilitate the sexual assault of M.J. Moore argues that this assertion was improper because it was not supported by any evidence. We reject this argument and, therefore, also reject Moore's argument that counsel was deficient by failing to object to the prosecutor's assertion.
¶12 "Generally, counsel is allowed latitude in closing argument ...." State v. Neuser , 191 Wis. 2d 131, 136, 528 N.W.2d 49 (Ct. App. 1995). However, argument that "goes beyond reasoning from the evidence and suggests that the jury should arrive at a verdict by considering factors other than the evidence" is improper. See id.
¶13 Here, as noted, the jury heard evidence that a non-semen secretion swabbed from M.J. showed a DNA profile consistent with Moore's DNA. The prosecutor's assertion about Moore spitting on his penis came in the context of the prosecutor's commentary on that evidence. The prosecutor stated:
Secretion swabs. Now, I admit and it's frustrating and it's [a] little ang[ering], we don't know where exactly [on M.J.'s body] those secretion swabs came from, but we do know from our nurse that a black light is used when secretion swabs are found, right? There's secretion on the body somewhere.
....
I submit to you they came from[,] came when the defendant starts spitting. He starts spitting on his penis because it's not going in. It's not going into her vagina, it's not going into her rectum.
¶14 In arguing that the prosecutor's assertion was not supported by any evidence, Moore asserts that there was "no evidence" that Moore spit on his penis, "no evidence" that the secretion swabs contained saliva, and "no evidence" that M.J.'s vagina or rectum was injured. We disagree with Moore's characterization of the evidence, and we further disagree that there needed to be specific evidence on each of these topics to support the prosecutor's assertion.
¶15 Moore effectively ignores that there was evidence that a non-semen secretion from Moore was found on M.J.'s body, and Moore points to no evidence showing that the secretion could not have been saliva. Further, the prosecutor's assertion was consistent with M.J.'s statement that Moore "hurt her." Finally, the context of the prosecutor's assertion, including his "I submit to you" prefatory remark, makes clear that the prosecutor was acknowledging a lack of direct proof that Moore spit on his penis to facilitate the assault. Rather, the prosecutor was making the more limited claim that the "spitting" scenario was one plausible explanation for why a non-semen secretion from Moore was found on M.J.'s body.
¶16 In sum, for the reasons stated, we conclude that the circuit court properly denied Moore's postconviction motion.
By the Court. -Judgments and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The Honorable Daniel L. Konkol presided over Moore's trial and sentencing. The Honorable Carolina Stark denied Moore's postconviction motion.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.